

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 4, 2023

**BY EMAIL AND ECF**
The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Lateef Goloba*, S1 21 Cr. 609 (LAP)

Dear Judge Preska:

    The Government respectfully submits this letter in advance of sentencing for defendant Lateef Goloba (the "defendant") in the above-captioned case, currently scheduled for February 9, 2023. The defendant pled guilty pursuant to a plea agreement (the "Plea Agreement") in which the parties stipulated to a United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 33 to 41 months' imprisonment (the "Stipulated Guidelines Range"). The Probation Department ("Probation") agrees with the calculation of the Stipulated Guidelines Range and has recommended a sentence of 30 months. (Presentence Investigation Report ("PSR") at 26.) The defendant has requested a sentence of "12 months or less." (Defendant Sentencing Submission at 15.) For the reasons set forth below, the Government submits that a sentence at the low end of the Stipulated Guidelines Range would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**I.   Background**

    **A.  The Enterprise**

    The defendant was a member of a criminal enterprise (the "Enterprise") that committed a series of frauds, primarily business email compromises and romance scams, against individuals and businesses located across the United States, including in the Southern District of New York. As a result of these frauds, more than 50 victims transferred more than $9 million to bank accounts under the control of members of the Enterprise.[1] The defendant's role in the Enterprise – similar

---

[1] In referring to the number of victims in the charging documents and in calculating restitution payments, the Government has only included payments from so-called "confirmed" victims – that is, individuals and/or entities that law enforcement has interviewed and/or otherwise confirmed transferred funds to the defendants after falling prey to business email compromise schemes and/or romance scams. However, the fraudulent bank accounts opened by the defendants charged in this case received more than $9 million in funds from many more than 50 individuals and/or entities.

to the role of most his co-defendants in this case – was to use aliases and/or fake companies to open bank accounts, to receive proceeds of the fraud schemes into those accounts, and to thereafter send money from those accounts to other recipients.

   1. **The Business Email Compromise Schemes**

The objective of the Enterprise's business email compromise schemes was to trick businesses into transferring funds into accounts controlled by the Enterprise. To do so, members of the Enterprise could compromise an actual email account of an employee of a victim company and/or a third party engaged in business with that company. Alternatively, members of the Enterprise could create "spoof" email accounts with slight variations of email accounts used by employees of a company and/or third parties engaged in business with the company in order to impersonate those employees or third parties. These fake email accounts were specifically designed to trick other employees of the company or third parties engaged in business with the company into thinking the fake email account was authentic.

The compromised email accounts and fake email accounts were then used to send instructions to transfer funds via wire or other means to certain bank accounts held under Enterprise control – accounts such as the ones opened and operated by the defendant. In other words, the Enterprise tricked victims into transferring funds to accounts that the victims believed were controlled by or otherwise affiliated with the company from which the victims received the instructions, and which in many cases related to amounts actually owed by the victims to the companies with the compromised email accounts. But, in reality, those bank accounts were controlled by members of the Enterprise.

   2. **The Romance Scams**

The Enterprise conducted the romance scams primarily by using electronic messages sent via email, text messaging, social media, or online dating websites that deceived the victims, many of whom were vulnerable, older men and women, into believing the victims were in romantic relationships with fake identifes assumed by members of the Enterprise. Once members of the Enterprise gained the trust of the victims, they used false pretenses to cause the victims to transfer funds via wire or other means to bank accounts the victims believed were controlled by their romantic partners and/or individuals or entities to whom their romantic partners were intentionally sending funds, when in fact the bank accounts were controlled by members of the Enterprise. At times, members of the Enterprise also induced victims of romance scams to accept proceeds of fraud schemes into their own accounts, and to subsequently transfer those funds to bank accounts under the control of members of the Enterprise.

   B. **Goloba's Conduct**

Goloba controlled at least 11 bank accounts held in the name of four fraudulent individual aliases and two fake entities on behalf of the Enterprise. Between in or about September 2019 and in or about December 2020, these 11 accounts received approximately $1,816,170.11 in transfers (not including transfers from one account controlled by Goloba to another account controlled by Goloba), including the following transfers from confirmed victims of the fraud schemes:

| Date | Amount | Victim | Alias Account |
|---|---|---|---|
| 11/22/2019 | $243,750.00 | Victim-1 | Vorster Global Services LLC |
| 11/26/2019 | $109,953.70 | Victim-1 | Vorster Global Services LLC |
| 12/13/2019 | $3,950.00 | Victim-2 | Mikel Thani Vorster |
| 1/3/2020 | $8,258.00 | Victim-2 | Mikel Thani Vorster |
| 8/11/2020 | $100,000.00 | Victim-3 | Steve A. Mabe |
| 12/8/2020 | $141,291.16 | Victim-4 | Mabe Swift Enterprises LLC |

Each of these confirmed victims sent funds to Goloba's accounts after falling prey to a BEC scheme. Specifically:

- Victim-1: Victim-1 is an entity based in the state of Washington. After the Enterprise hacked the email account of an employee ("Employee-1") of Victim-1 who was responsible for managing vendor relationships for Victim-1, the Enterprise created an email account similar to the email address for the CFO of one of the company's vendors (the "Fake CFO Email Address"). The Fake CFO Email Address sent fraudulent payment instructions to Employee-1, resulting in numerous payments being made from Victim-1, including the $353,703.70 in transfers to an account held in the name of Vorster Global Services LLC, but controlled by Goloba.

- Victim-2: Victim-2 is a company based in San Diego. The Enterprise placed an order for ceiling fans with Victim-2 and paid for them with a credit card that was later cancelled. The Enterprise then sent wire information for the "freight company" purportedly chosen by the purchaser of the ceiling fans, which resulted in Victim-2 sending $12,280 in transfers to an account held by Mikel Thani Vorster, but controlled by Goloba.

- Victim-3: Victim-3 is an individual based in Miami, Florida. After the Enterprise hacked the email account for Victim-3's financial manager, the Enterprise sent Victim-3 fraudulent wire information to effect Victim-3's request to send $100,000 to his retirement account. As a result, rather than sending $100,000 to his retirement account, Victim-3 sent $100,000 to an account held in the name of Steve A. Mabe, but controlled by Goloba.

- Victim-4: Victim-4 is a municipality in Alabama. The Enterprise hacked the email address of a city official of Victim-4. The Enterprise then used that email address to request that a bank holding an account on behalf of Victim-4 send a $141,291.16 wire to an account held in the name of Mabe Swift Enterprises, but controlled by Goloba.

In several instances, after funds were received into Goloba's accounts, funds were sent to, among other locations, accounts controlled by other charged co-conspirators and other accounts controlled by Goloba. These accounts also had cash withdrawals.

**C. Procedural History, Plea Agreement, and the PSR**

The defendant was arrested on October 13, 2021 pursuant to an indictment charging him with one count of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h), and one count

of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. Eleven defendants were charged in the indictment with one or both of those crimes, and one of those defendants was also charged with aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), (b), and 2. On December 27, 2021, a superseding indictment was unsealed charging the eleven defendants charged in the indictment with the same crimes, but adding a twelfth defendant.

On September 7, 2022, Goloba pled guilty to Count Two of the superseding indictment, charging conspiracy to commit bank fraud, pursuant to the Plea Agreement. In the Plea Agreement, the parties agreed to an offense level of 20 and a criminal history category of I, resulting in a Guidelines range of 33 to 41 months' imprisonment. The defendant also agreed to forfeit $1,816,170.11 and to pay restitution in the amount of $607,202.86.[2]

Probation also calculates a Guidelines range of 33 to 41 months' imprisonment. Probation recommends a sentence of 30 months' imprisonment, a slight variance from the bottom of the Guidelines range. The defendant requests a below Guidelines sentence of 12 months or less.

**II. Discussion**

    **A. Relative Culpability**

Goloba will be the third defendant to be sentenced in this case, though only one defendant has been sentenced as of this submission.[3] Goloba was a knowing and willing participant in the conspiracy. His receipt of over $1.8 million in fraud proceeds into his fake bank accounts places him in the middle of his co-defendants when measured by the total amount of money received into the fake bank accounts.

The previously sentenced defendant, Emmanuel Oronsaye-Ajayi, who received 24 months' imprisonment, received over $1.9 million in fraud proceeds – i.e., approximately $100,000 more than Goloba. However, the $1.9 million received by Oronsaye-Ajayi was the result of just a few transactions, including one transaction of over $1.8 million which was by far the largest single transfer of funds received by any defendant in this case. By contrast, Goloba amassed the $1.8

---

[2] As indicated above, *supra* note 1, in calculating restitution amounts, the Government included only transfers of funds from so-called "confirmed" victims of the fraud schemes, that is, individuals and/or entities that provided information to the Government confirming that they were, in fact, victims of business email compromise schemes or romance scams. However, in calculating forfeiture amounts (and the loss amount for purposes of the Guidelines), the Government has taken the position that, absent some other explanation for the funds, all funds transferred into a bank account held in the name of an alias and/or a fake company and which is known to have received confirmed victim funds should be considered proceeds of fraud by a preponderance of the evidence. Therefore, the Government has sought forfeiture of the total amount transferred into the defendants' accounts – except for any transfers that originated from accounts controlled by the same defendant as the recipient account – while only seeking restitution of transfers from confirmed victims.

[3] Defendant Warris Adenuga is scheduled to be sentenced on February 8, 2023, i.e., one day before Goloba.

million in transfers over the course of approximately 70 transfers from September 2019 through December 2020, with the largest transaction being the $243,750 transaction from Victim-1 in November 2019.  Oronsaye-Ajayi also had a prior arrest in which he was found with fake identification documents; by contrast, Goloba has no relevant criminal history.

A table indicating the Government's view of the defendants' approximate relative culpability, divided into three tiers, is set forth below.[4]

| Name | Count One | Count Two | Count Three | Approx. Total Loss | Guidelines Range | Sentence |
|---|---|---|---|---|---|---|
| Tier 1 | | | | | | |
| Adedayo John | X | X | | $4.51M | 70-87 | N/A |
| Oluwadamilola Akinpelu | X | X | | $5.07M | 41-51 | N/A |
| Morakinyo Gbeyide | X | X | X | $3.76M | 51-63 | N/A |
| Kazeem Raheem | X | | | $4.04M | 51-63 | N/A |
| Tier 2 | | | | | | |
| Smart Agunbiade | | X | | $1.77M | 33-41 | N/A |
| Lateef Goloba | X | X | | $1.82M | 33-41 | N/A |
| Samsondeen Goloba | X | X | | $1.56M | 33-41 | N/A |
| Emmanuel Oronsaye-Ajayi | X | X | | $1.93M | 33-41 | 24 months |
| Aramiwale Shittu | X | X | | $197K | 15-21 | N/A |
| Warris Adenuga | X | X | | $977K | 27-33 | N/A |
| Tier 3 | | | | | | |
| Olawoyin Peter Olarewaju | X | X | | $475K | 21-27 | N/A |

**B. A Sentence at the Low End of the Stipulated Guidelines Range is Reasonable**

The Government respectfully submits that a sentence at the low end of the Stipulated Guidelines Range of 33 to 41 months' imprisonment would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.

The defendant committed a serious crime. As made clear by the victim impact statements submitted in this case, many of the victims of the Enterprise suffered significant emotional and financial turmoil as a result of these business email compromise schemes and romance scams. Victims of the Enterprise were tricked into sending money to fraudsters, for example, under the guise of making a down payment for a home or based on the false pretense that the recipient of the funds was in love with the victim.  While the defendant is not accused of personally participating in these underlying fraud schemes, the schemes only thrive where co-conspirators – such as Goloba – are willing to open fake bank accounts and launder money for the fraudsters.  In other words, the role played by Goloba (and the other co-defendants in this case) are essential to the operation of

---

[4] Table excludes Olawale Olaniyan, who passed away.  The Guidelines ranges included herein are subject to change depending on the outcome of plea discussions with defendants who have not yet entered into plea agreements.

the schemes. Accordingly, in order to reflect the seriousness of the offense and promote respect for the law, a substantial sentence is necessary.

In addition, Goloba's conduct extended over a lengthy period of time. This was not an isolated incident nor activity in which the defendant engaged in only briefly. To the contrary, Goloba received approximately 70 transfers into 11 bank accounts over more than 15 months. Therefore, Goloba regularly received and transferred funds from victims of the business email compromise schemes and romance scams over a significant period of time.

An appropriate sentence should also consider the need for deterrence and protect the public from future crimes of the defendant. The types of schemes perpetrated by the Enterprise are, unfortunately, exceedingly common, and there are many individuals who stand ready and willing to open fake bank accounts and assist fraudsters in perpetrating these schemes. The defendant's sentence should send the message to this defendant and to all others considering opening fake bank accounts or laundering money in connection with similar fraud schemes that this conduct has serious consequences. A substantial sentence is necessary to afford adequate deterrence and to protect the public.

The Government therefore recommends that the Court impose a sentence at the low end of the Stipulated Guidelines Range, consistent with its position with respect to the sentencing of Oronsaye-Ajayi, who had the same Guidelines range and for whom the Government also requested a Guidelines sentence. While Oronsaye-Ajayi ultimately received a below Guidelines sentence of 24 months, Goloba's conduct was more frequent and spanned a longer period of time than Oronsaye-Ajayi's. However, the Government also acknowledges that Oronsaye-Ajayi accepted a transfer far greater than any transfer received by Goloba (over $1.8 million and over $240,000, respectively), and that Oronsaye-Ajayi had a prior conviction relating to his possession of false identification documents.

**III.     Conclusion**

   For the reasons set forth above, the Court should issue a sentence at the low end of the Stipulated Guidelines Range of 33 to 41 months' imprisonment.

                 Respectfully submitted,

                 DAMIAN WILLIAMS
                 United States Attorney

         By:    /s/
                  Kaylan E. Lasky
                  Matthew Weinberg
                  Assistant United States Attorneys
                  (212) 637-2315 / 2386

Cc:  Raoul Zaltzberg, Esq. (by Email and ECF)
    All Counsel (by ECF)